*236 The opinion of the Court was delivered by
Fenner, J.
On May 15th, 1875, J. J. Martin took out a policy of insurance with the defendant Company, for the sum of $9,000, on sugar and molasses in a certain warehouse. On the 8th of June, 1875, the warehouse and contents wore destroyed by fire. Shortly thereafter, Martin made claim for the entire amount of the insurance, with preliminary proofs duly sworn to by him, in which he stated that, at the time of the fire, the warehouse contained, (besides molasses not belonging to him), 205 hhds of sugar, of which he was the owner of 124, and the remaining 81 belonged to P. N. Canton. The Company not being satisfied'with these proofs, it was agreed between itself and Martin, that each party should appoint two experts, who should make a survey of the premises and report thereon. It appears from a preliminary agreement signed by the experts, that the survey about to be held “ shall be binding on both parties, said survey being held to ascertain the possible contents of said premises.” The report itself, however, signed by all the experts, certifies as follows: “We find, according to the plan herewith submitted, that on the left-hand side of the shed there were 95 hhds. of sugar; we find that on the right-hand side of the shed there were * * * 11 hhds. and 12 hhds. of sugar, and in a space measuring 18& feet, we find the contents so much consumed that it is impossible to certify that there was anything there at all.” In the accompanying plan, the 95, 11 and 12 hhds. are duly credited to certain spaces, while over the 18-J feet space last referred to, is written the words: “ 35 hhds. claimed; no evidence of any such quantity.” The evidence satisfied us that this report meant what it says, that as to the 95, 11 and 12 hhds. it is not an estimate of possible contents, but a statement of amount of sugar actually in the warehouse, based upon the remnants of hhds. found in the debris of the fire.
Without further evidence upon this report of experts, showing instead of 205 hhds. sworn to by Martin, only 118 hhds., certain or extremely prob.able, and an additional 35 claimed and possible, after some debate and controversy between the parties, and distinctly as a compromise, an adjustment was agreed upon and was endorsed upon the policy as follows:
“ New Orleans, 15th June, 1875.
A partial loss on this, policy, amounting to $7,905.09, is hereby acknowledged and made payable to Mr. J. J. Martin, in sixty days after date. (Signed) P. Fourcht, President.”
We say that this adjustment was clearly a compromise, because it so appears from the evidence, and because Martin accepted less than the amount which he claimed and for which he was insured, and the *237 Company allowed more than would have appeared to be due, according to the report of the experts.
Thereafter, Martin applied to plaintiff to discount the loss. Plaintiff, with due caution and to assure himself of safety in the transaction, called in person ujjon the president of the Company, and had an interview with him on the subject, and subsequently, plaintiff sent his clerk, Mr. Gauthier, who had another interview with the president. The accounts of these interviews, given by plaintiff and Gauthier, differ somewhat from that given by the president; but even from the statement of the latter alone, it appears the president gave very strong and positive assurances that he believed the adjustment to bo all right and that the money would certainly he paid at maturity, unless something should turn up to invalidate it, such as the discovery that Martin had himself burned the warehouse. Upon these assurances plaintiff discounted the loss at ten per cent, off the face, paid the amount in cash, and took an assignment, of which he immediately notified the Company in writing.
At maturity, defendant refused to pay, and plaintiff brings the present suit, setting forth in his petition the adjustment of the loss, the assurances. received by him from the president, his purchase made on the faith of such assurances, the assignment to Mm, and notice to the Company, and claiming judgment for the amount.
Defendant answers, denying generally, and averring specially, that the adjustment made is null and void, because “ obtained through fraudulent misrepresentations made in the preliminary proof submitted by Martin to them,” on June 11th, 1875, in which Martin swore “that the warehouse contained, at the time of the fire, 205 hhds. of sugar, of which 124 belonged to himself, and 81 belonged to P. N. Cantón;” that upon his said representations, “ the respondents made said adjustment;” that “subsequently, respondents ascertained that the total amount of the sugar contained in said warehouse, at the time of the fire, was only 52 hhds.” forty-nine of which belonged to P. N. Canton and three hhds. only to J. J. Martin; that by special stipulation in the policy, all fraud or attempt at fraud, by false swearing or otherwise, shall cause a forfeiture of all claim on the Company; that by said fraudulent misrepresentations, the said policy has been vitiated, and is null and void.
It is perfectly apparent that the allegations of fact and legal conclusions drawn therefrom, on which the above special defense rests, are not sustained by the evidence and the law of this case.
1. It is manifestly untrue that the adjustment was made upon the faith of the representations made by Martin in his preliminary proofs. On the contrary, the report of the experts and the adjustment itself *238 demonstrate that the latter was made with full knowledge or belief, on the part of the Company, that said proofs were false and presumably fraudulent, Martin had sworn to a loss of 124 hhds. valued by him at above $14,000. The report of the experts establishes a loss of not more than 77 hhds. of Martin’s sugar. The Company adjusts the loss at $7,905. How is it possible to contend that the adjustment was based upon the representations in the preliminary proofs? And how can it be claimed that the adjustment can he vitiated by a circumstance well known to the Company at the time it was made ?
2. The defense, in the terms in which it is set up, is evidently based upon a breach of one of the warranties of the policy ; and would only be appropriate as a defense to an action on the policy itself. But this is not an action on the policy; it is an action on the adjustment. The subject has been learnedly considered by the highest courts of Illinois and New York, and it is there settled that, where a loss has been adjusted between an Insurance Company and a policy bolder, such adjustment is a new and independent agreement; that the action for such adjusted loss is a suit, not upon the policy, but upon the new promise or contract, and may be prosecuted under tbe common count upon an account stated; and that the Company cannot set up in defense to such action, breadles of warranties or stipulations in the original policy. Farmers’ Ins. Co. vs. Chemut, 50 Ill. 112; Illinois Ins. Co. vs. Archdeacon, 82 id. 236; Smith vs. Glen’s Falls Ins. Co. 62 N. Y. 85.
We fully approve of the general doctrine of these cases (to which, however, there may be exceptions) and under its application to this case, the Company’s defense, so far as founded upon the provision of the policy vitiating it, in case of fraud or false swearing, falls to the ground.
Under the circumstances heretofore detailed, we think all consideration of false swearing in the preliminary proofs is equally eliminated from the case. There remains nothing hut the new and independent contract, partaking strongly, as we have shown, of the nature of a transaction or compromise, which must stand upon its own merits, and which must he enforced, unless the defendant can establish a clear defense of fraud or error. The burden of proof lies upon the defendant, and lie must establish it with clearness and certainty. Keogh vs. Forman, 33 A., not yet reported.
It is not sufficient to show that Martin claimed more than he was entitled to. That the defendant knew when it made the adjustment. It is not sufficient to show that Martin has failed to prove satisfactorily that he had sugar in the warehouse to the value of the amount adjusted. The adjustment dispensed plaintiff from any proof *239 whatever oil that subject. In the language of the Illinois Supreme Court: “ The insurer and the insured, both being competent to contract, mutually adjusted the differences between them, agree upon a balance, which is endorsed upon the policy, and nothing further remains to be done by the insured under the policy, and nothing further is to be done on the part of the Company, except to pay over the balance which has been agreed upon and struck; * * after the adjustment, the rights of the parties became fixed. No affirmative act was required on the part of the insured to -protect their rights. The Insurance Company was indebted to them in a definite and fixed sum of money, which it was bound to pay.” 82 111. 236.
It is not sufficient to raise doubts, even strong and reasonable ones; as to whether Martin had sugar to the value of the adjustment. Defendant carries the burden of proof, and -must establish the fact by its evidence.
While it may be that, technically speaking, plaintiff only stands in the shoes of Martin, so far as his substantial rights are concerned, yet the circumstances under which he accepted the assignment, certainly entitle him equitably to claim a strict and rigid application of these legal principles, and free him from those adverse presumptions resulting from the inconsistencies of Martin’s testimony and from the disappearance of his books and the like, which might have had soine operation had Martin been himself the plaintiff.
Under these principles, it would be little less than rashness for even an advocate to assert, in view of the vast mass of uncertain, incomplete and contradictory evidence found in this record, that defendant has proved, with anything approaching legal certainty, that Martin did not have in the warehouse sugars belonging to himself equal in value' to the adjusted amount.
The defendant asserts in its answer, that “ subsequently to the adjustment, it ascertained that the total amount of the sugar contained in said warehouse, at the time of the fire, was only 52 hhds.,” of which only three belonged to J. J. Martin. This was certainly a bold assertion, in view of the report of the experts, and in view' of the fact that one of its own experts had unequivocally sworn, at a judicial inquest held before this suit was brought, that he had actually counted the remnants of about 95 hhds. in the debris of the fire.
The assertion rests alone upon the testimony of a single witness, a creditor of Martin, who connived at Martin’s claim, as long as he hoped to be paid out of the proceeds, and when that hope vanished, mischievously interfered and stirred up this litigation. His testimony is contradicted by a cloud of witnesses, and as inconsistent with every fact in the record.
*240 It would be useless for us to analyze this evidence. So far as tin* direct evidence of parties who saw and estimated or counted the hhds. just before the fire, is concerned, the preponderance -is strongly in favor* of plaintiff, and opens a question of veracity of witnesses, which was solved in favor of plaintiff by the Judge a giio, who saw and heard them and had better opportunities of determining it than we can have.
So far as the indirect evidence touching" purchases and sales, removals and entries, goes, it is so confused, incomplete and contradictory, that opxrosing counsel present a variety of theories, about equally plausible, from which, on the one hand, it would follow that Martin had no sugar at all, and on the other, that he had even more than he claimed in his preliminary proof. In this sea of conjecture and uncertainty, our minds find no resting place except on the firm principle that the burden of proof rests on defendant, and that the judgment appealed from is not to be disturbed, except upon full conviction that it is erroneous.
Judgment affirmed at appellant’s cost.